```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

PENNEY MALOY,

    Plaintiff,

v.                            Case No:  2:17-cv-470-FtM-29MRM

SCOTTSDALE INSURANCE COMPANY,

    Defendant.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on plaintiff's Motion for Determination of Entitlement to Reasonable Attorney[']s Fees and Courts Costs (Doc. #26) filed on January 30, 2019.  Defendant filed a Response in Opposition (Doc. #27) and an Affidavit of David Gee in Support (Doc. #28) on February 13, 2019.  Also before the court is the Joint Stipulation For Order of Dismissal With Prejudice (Doc. #29.)

Plaintiff seeks costs and attorney fees pursuant to Fed. R. Civ. P. 54(d), Fla. Stat. § 57.041, and Fla. Stat. § 626.9373. While defendant Scottsdale Insurance Company (defendant or Scottsdale) obtained jurisdiction in this Court by asserting plaintiff would be entitled to reasonable attorney fees if she prevailed (Doc. #1, ¶7), it now asserts that plaintiff is entitled to no attorney fees or costs.  Alternatively, Scottsdale asserts

plaintiff is entitled only to fees for a portion of the litigation. For the reasons set forth below, the motion for attorney fees and costs is granted as to entitlement, and granted in part and denied in part as to the amount of attorney fees and costs.

## I. Procedural History

The record in this case establishes the following chronology: On October 9, 2016, plaintiff's residence suffered damage to its roof and interior due to heavy wind and/or rain in a storm. Plaintiff filed a claim under her insurance policy with Nationwide Insurance Company, which was underwritten by Scottsdale, a surplus lines insurer.

Scottsdale first received notice of plaintiff's claim on November 2, 2016. (Doc. #28, ¶ 5.) By letter dated November 28, 2016, Scottsdale notified plaintiff that a portion of the claimed damage was not covered by its policy, and that an independent adjuster had inspected the damages and determined that the "roof leaked due to wear and tear, deterioration, and inadequate maintenance, which are excluded causes of loss." After deducting the $1,000 deductible and non-recoverable depreciation, Scottsdale issued a $7,218.69 check to plaintiff under separate cover. (Doc. #28-3, p. 3.)

Plaintiff disputed Scottsdale's determination of the claim, and therefore Scottsdale continued to investigate the claim,

including hiring an engineering firm. On March 28, 2017 Scottsdale made an additional payment to plaintiff in the amount of $6,564.01. On May 10, 2017, Scottsdale made another supplemental payment to plaintiff in the amount of $1,407.24 (Doc. #28-5.) Plaintiff continued to dispute the sufficiency of these amounts.

On May 17, 2017, an attorney faxed a letter to Scottsdale notifying it of his representation of plaintiff. (Doc. #28-6.) On May 19, 2017, plaintiff's attorney sent a letter to Scottsdale noting, among other things, that "there is obviously a disagreement between the parties" as to three specifically identified matters. Plaintiff's attorney requested that Scottsdale "reevaluate its inadequate initial payment" and "make payment within the next 14 days". (Doc. #28-7.) Counsel included an estimate of damages in the amount of $60,161.49 from CNI Concepts Enterprises Inc.

By a reply letter dated June 6, 2017, Scottsdale rejected counsel's estimate, but noted that another $5,115.20 supplemental payment was issued. (Doc. #28-9.)

On June 9, 2017, plaintiff's attorney sent a letter to Scottsdale noting plaintiff's continued disagreement and again requesting reevaluation and payment of more money within fourteen days. Because of an address error, Scottsdale asserts it did not receive this letter until June 17, 2017.

On June 27, 2017, plaintiff filed a lawsuit against Scottsdale in state court for breach of the insurance policy. (Doc. #1-1, p. 4.)

By letter dated July 11, 2017, Scottsdale advised plaintiff that "no additional payment is due." Scottsdale also invoked the appraisal clause of the insurance Policy and appointed Brian Wasserman of Worley as its appraiser. (Doc. #28-1, Exh. A.)

On July 17, 2017, plaintiff's attorney sent the Complaint and Summons to the Chief Financial Officer of the State of Florida, who then electronically delivered a copy to defendant on July 21, 2017. (Doc. #1-1, p. 3.)

On August 18, 2017, defendant removed the case to federal court based upon diversity of citizenship (Doc. #1) and filed a Motion to Compel Appraisal and Abate All Proceedings Pending Completion of Appraisal, or, in the Alternative, to Dismiss or Require a More Definite Statement (Doc. #3.) On August 30, 2017, the parties filed a Joint Motion to Abate All Proceedings Pending Completion of Appraisal (Doc. #7), which was granted and the case was stayed (Doc. #8.) The appraisal process did not go smoothly, and required court intervention. (Docs. ## 9, 10, 11, 12, 14, 18, 19, 20, 21, 22, 23, 24.)

On December 4, 2018, a $94,083.58 appraisal award was drafted and signed by defendant's appraiser and a neutral umpire. (Doc.

#26-3.)  On December 26, 2018, Scottsdale sent checks for the full amount of the appraisal award, offset by the prior payments, to plaintiff's counsel.  (Doc. #24, ¶4.)  The parties notified the Court on January 7, 2019, that the appraisal process was complete and they were exploring the possibility of settling remaining issues, including attorney fees.  (Doc. #24, ¶5.)  The Court directed the parties to file a stipulation for dismissal and agreed that unresolved issues regarding attorney fees would be addressed after dismissal.  (Doc. #25.)  On February 18, 2019, the parties filed a Joint Stipulation for Order of Dismissal With Prejudice (Doc. #29).

## II.  Entitlement to Attorney Fees

When federal jurisdiction is based upon diversity of citizenship, a party's right to attorney's fees is determined by state law.  Prime Ins. Syndicate, Inc. v Soil Tech Distribs., Inc., 270 F. App'x 962, 963 (11th Cir. 2008) (citing All Underwriters v. Weisberg, 222 F.3d 1309, 1312 (11th Cir. 2000)("[W]e hold that Fla. Stat. § 627.428 is substantive law for Erie[1] purposes.")).  The only basis for an award of attorney fees in this case is Fla. Stat. § 626.9373(1), which provides:

> (1) Upon the rendition of a judgment or decree by any court of this state against a surplus lines insurer in favor of any named or omnibus

---

[1] Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

> insured or the named beneficiary under a policy or contract executed by the insurer on or after the effective date of this act, the trial court or, if the insured or beneficiary prevails on appeal, the appellate court, shall adjudge or decree against the insurer in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the lawsuit for which recovery is awarded.

Fla. Stat. § 626.9373(1). The Court finds cases interpreting the very similar Fla. Stat. § 627.428 to be persuasive as to § 626.9373(1). The purpose behind both statutes is ". . .to place the insured . . . in the place she would have been if the carrier had seasonably paid the claim or benefits without causing the payee to engage counsel and incur obligations for attorney's fees." Lewis v. Universal Prop. & Cas. Ins. Co., 13 So. 3d 1079, 1081 (Fla. 4th DCA 2009)(citation omitted). "It is the incorrect denial of benefits, not the presence of some sinister concept of 'wrongfulness,' that generates the basic entitlement to the fees if such denial is incorrect." Ivey v. Allstate Ins. Co., 774 So. 2d 679, 684 (Fla. 2000).

Plaintiff satisfies the requirements of the Fla. Stat. § 626.9373(1). Florida courts have allowed recovery of attorney fees even in the absence of a literal judgment when an insured obtains the "functional equivalent of a confession of judgment or a verdict," such as by the insurer's payment of a claim based upon settlement. Wollard v. Lloyd's & Cos. of Lloyd's, 439 So. 2d 217,

218 (Fla. 1983). See also Ivey v. Allstate Co., 774 So. 2d 679, 684 (Fla. 2000); Pepper's Steel & Alloys, Inc. v. United States, 850 So. 2d 462, 465 (Fla. 2003). Here, plaintiff has obtained the functional equivalent of a judgment by virtue of the appraisal award, and will have an order pursuant to the Joint Stipulation (Doc. #29), which effectively approves the appraisal award in favor of plaintiff and against Scottsdale. The amount of the appraisal is greatly in excess of the amount otherwise paid by Scottsdale.

Scottsdale argues, however, that plaintiff is not entitled to any attorney fees under Fla. Stat. § 627.9373(1) because she did not serve her Complaint, which was filed before Scottsdale invoked the appraisal procedure, until after the invocation of the appraisal process. The service of the complaint after invocation of the appraisal process, Scottsdale argues, establishes that plaintiff unnecessarily filed the suit, and therefore is not entitled to any attorney fees. The Court disagrees.

Florida case law establishes that service of process is not the proper focal point, rather it is the filing of a complaint. In any event, under Florida law attorney fees may be appropriate even when appraisal is invoked prior to the filing of a complaint.

> Florida's cases have uniformly held that a section 627.428 attorney's fee award may be appropriate where, following some dispute as to the amount owed by the insurer, the insured files suit and, *thereafter*, the insurer invokes its right to an appraisal and, as a

consequence of the appraisal, the insured recovers substantial additional sums. See, e.g., Goff v. State Farm Fla. Ins. Co., 999 So. 2d 684 (Fla. 2d DCA 2008); Jerkins v. USF&G Specialty Ins. Co., 982 So. 2d 15 (Fla. 5th DCA 2008); First Floridian Auto & Home Ins. Co. v. Myrick, 969 So. 2d 1121 (Fla. 2d DCA 2007), review denied, 980 So. 2d 489 (Fla.2008); Ajmechet v. United Auto. Ins. Co., 790 So. 2d 575 (Fla. 3d DCA 2001). Underlying these decisions is the notion that the insureds were entitled to fees as the insureds "did not 'race to the courthouse,'" see Jerkins, 982 So. 2d at 18, the suit was not filed simply for the purpose of the attorney's fee award, but rather to resolve a legitimate dispute, see id., and the filing of the suit acted as a necessary catalyst to resolve the dispute and force the insurer to satisfy its obligations under the insurance contract, see State Farm Fla. Ins. Co. v. Lorenzo, 969 So. 2d 393, 398–99 (Fla. 5th DCA 2007).

There are far fewer cases addressing an insured's entitlement to fees in the circumstance where suit is filed after the insurer invokes the appraisal process. This was, however, the circumstance in both Travelers Indemnity Ins. Co. v. Meadows MRI, LLP, 900 So. 2d 676 (Fla. 4th DCA 2005), and Federated Nat'l Ins. Co. v. Esposito, 937 So. 2d 199 (Fla. 4th DCA 2006). The decisions in these cases plainly indicate that whether suit is filed before or after the invocation of the appraisal process is not determinative of the insured's right to fees; rather, the right to fees turns upon whether the filing of the suit served a legitimate purpose.

Lewis v. Universal Prop. & Cas. Ins. Co., 13 So. 3d 1079, 1081–82 (Fla. 4th DCA 2009). The Court finds that plaintiff's lawsuit was necessarily filed for the valid purpose of resolving a legitimate dispute, and not for the purpose of generating and seeking attorney

fees.

While Scottsdale argues that plaintiff should have not served the Complaint after its invocation of the policy appraisal right, the Court is not persuaded. None of the state cases mentioned in <u>Lewis</u> focus on service of process, but upon filing of a complaint. Additionally, a party has no right to file a case and simply sit on it without serving process. Fla. R. Civ. P. 1.070(j)(if no service within 120 days court must take action to dismiss case or effect service); Fed. R. Civ. P. 4(m)(generally, court "must" dismiss complaint which is not served within 90 days). Accordingly, the Court finds that plaintiff is entitled to attorney fees.

Scottsdale argues in the alternative that plaintiff is not entitled to attorney fees for pre-litigation work by plaintiff's attorney, nor for attorney fees incurred after September 6, 2017, when the appraisal was invoked. Scottsdale argues that the Policy requires each party to bear their own expenses for the appraisal and umpire.

As to the pre-litigation hours, the Court finds that the hours should not be excluded, and that plaintiff is entitled to the fees. As of November 28, 2016, Scottsdale rejected portions of plaintiff's claim and paid plaintiff only a nominal amount. Plaintiff disputed the payment, and had an initial meeting with

counsel on December 14, 2016.  After reviewing the claim file, counsel initiated contact with an expert around February 16, 2017, to conduct an inspection, which initial report was not received and reviewed until May 9, 2017.  (Doc. #26-6, pp. 8-9.) Scottsdale did not make a second payment until March 28, 2017, which was another small payment, and a third small payment on May 10, 2017.  It was after this payment that counsel sent a letter of demand to Scottsdale.  The Court finds that the pre-litigation actions were necessary and part of the process to get to a stage for appraisal and the final award.

As to the post-appraisal hours, the Court finds that these hours should also be allowed.  Although the Court stayed the case pending appraisal on September 6, 2017, immediately thereafter Scottsdale sought to reopen the case to establish certain deadlines to complete the appraisal process, and the parties disputed the issue of attorney's fees.  As the Court's intervention was required after September 6, 2017, the request to exclude these hours is denied.

The Policy does provide for each party to pay its own appraiser and to bear the "other expenses" equally, Doc. #28-2, p. 35, but the term "expenses" does not encompass attorney fees. Plaintiff is entitled to "attorney's fees associated with an expensive and drawn out appraisal," Travelers Indem. Ins. Co. v.

Meadows MRI, LLP, 900 So. 2d 676, 679 (Fla. 4th DCA 2005), and for litigating entitlement to attorney's fees, Nationwide Prop. & Cas. Ins. v. Bobinski, 776 So. 2d 1047, 1048 (Fla. 5th DCA 2001). At Scottsdale's request, the Court had more involvement in the appraisal process than is usual, and therefore attorney fees incurred during the appraisal process will not be excluded.

### III. Amount of Attorney Fees

A reasonable attorney fee is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The party seeking an award of fees should submit adequate documentation of hours and rates in support, or the award may be reduced. Id. A "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The burden is on the fee applicant "to produce satisfactory evidence" that the rate is in line with those prevailing in the community. Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). Plaintiff seeks $14,439.00 in attorney fees based on the Affidavit of Plaintiff's

Counsel, Kenneth R. Duboff, Esq. Regarding Amount of Attorney['] Fees and Costs. (Doc. #26-6, Exh. F.)

**1. Hourly Rate**

Plaintiff seeks a rate of $600 per hour for Kenneth R. Duboff, who was admitted to the Florida Bar in 1976; $500 per hour for Joshua A. Blacksten, who was admitted to the Florida Bar in 1999; $500 per hour for Nicole S. Duboff, who was admitted to the Florida Bar in 2003; $300 an hour for Gabriela Perez-Dumois, who was admitted to the Florida Bar in 2015; $300 an hour for Gabriel Perez, who was admitted to the Florida Bar in 2016; $250 an hour for Marian Rivera, who was admitted to the Florida Bar in 2017, and $400 an hour for Alexander M. Navarro, who was admitted to the Florida Bar in 2014. (Doc. #26-6, Exh. F, ¶¶ 4b.) Counsel refers to Miami-Dade County, Florida as to the customary hourly rates charged, however the prevailing market is the Fort Myers Division of the Middle District of Florida. Olesen-Frayne v. Olesen, 2:09-CV-49-FTM-29DNF, 2009 WL 3048451, *2 (M.D. Fla. Sept. 21, 2009). The rates in Fort Myers are significantly lower than Miami. Therefore the hourly rates will be reduced as follows:

|  | **Requested Rate** | **Reduced Rate** |
| --- | --- | --- |
| Kenneth R. Duboff (KRD) | $600 | $400 |
| Joshua A. Blacksten (JAB) | $500 | $350 |
| Nicole S. Duboff (NSD) | $500 | $300 |
| Gabriela Perez-Dumois (GPD) | $300 | $250 |

| Gabriel Perez (GP) | $300 | $200 |
| Marian Rivera (MR) | $250 | $200 |
| Alexander M. Navarro (AMN) | $300 | $250 |

### 2. Number of Hours

The Court has reviewed the number of hours expended by each attorney and finds that the hours are reasonable with a few exceptions. As a preliminary matter, all requested hours for AF will be eliminated as the individual was not identified by name or experience and AF is not listed in the billing records as one of the of the attorneys of record. On those occasions that Mr. Duboff charged $500 instead of the customary $600, the rate was still reduced to $400 an hour. The entry on October 23, 2018, at 4:27 PM (0.3 hours) fails to identify an attorney with the task and time and therefore will be eliminated. The 0.3 hours for e-filing the lawsuit and 0.5 hours for opening a new file and importing documents will be eliminated as clerical or administrative tasks. The Court will otherwise allow the requested hours at the reduced hourly rates for a total of $9,747.00.

### IV. Costs

Plaintiffs, as the prevailing parties, are usually entitled to an award of costs under Rule 54 of the Federal Rules of Civil Procedure. "[Title 28 U.S.C.] Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary

authority found in Rule 54(d)." <u>Crawford Fitting Co. v. J. T. Gibbons, Inc.</u>, 482 U.S. 437, 441 (1987). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title [28 U.S.C. § 1923]; [and]
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 U.S.C. § 1828].

28 U.S.C. § 1920.

Plaintiff seeks $689.35 in taxable costs. This amount includes $250.00 to obtain an estimate from CNI Concepts, the $424.35 filing fee in Lee County Circuit Court, and the $15.00 for service of process fee. The Court finds that the $250.00 is not a taxable cost, but the other two costs are taxable.

Accordingly, it is hereby

**ORDERED:**

1. The Joint Stipulation for Order of Dismissal With Prejudice (Doc. #29) is **GRANTED**, and the case is dismissed with prejudice. The Clerk shall enter judgment accordingly, including attorney fees and costs set forth below, terminate all remaining deadlines and motions, and close the file.

2. Plaintiff's Motion for Determination of Entitlement to Reasonable Attorney[']s Fees and Courts Costs (Doc. #26) is **GRANTED** as to entitlement and **GRANTED IN PART AND DENIED IN PART** as to the amount of attorney fees and costs. Attorney fees are awarded in the amount of $9,747.00 and costs are awarded in the amount of $439.35.

**DONE and ORDERED** at Fort Myers, Florida, this ___26th___ day of March, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record